UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civ. File No. 00-56 (PAM/JGL)

Samuel S. Griffiths, Plaintiff,

v.

**MEMORANDUM AND ORDER**

Northwest Airlines, Inc.,

Defendant.

---

This matter is before the Court upon Defendant Northwest Airline's Motion to Compel Arbitration and Motion to Stay or Dismiss. For the following reasons, Defendant's motion is granted, and this action is dismissed.

**BACKGROUND**

Plaintiff Samuel Griffiths worked as a non-union Manager for Defendant Northwest Airlines ("NWA") from January 1994 until his termination in December 1998.[1] On April 16, 1999, Griffiths filed a charge with the Minnesota Department of Human Rights ("MDHR"), alleging that NWA terminated his employment and harassed him because of his race (black) and national origin (Jamaican) in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363.03 subd. 1(2)(b) and (c). The charge was then cross-filed

[1]NWA has neither pled nor discussed the specific reason(s) for Griffiths' termination. It has merely stated that Griffiths was fired "for legitimate, non-discriminatory, job-related business reasons [...] other than age, sex, religion, disability, race or national origin." (Answer ¶ 5.)

FILED MAR 31 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD MAR 31 2000
DEPUTY CLERK

with the EEOC the next month, alleging discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. After receiving right-to-sue letters from both agencies,[2] Griffiths filed suit against NWA in Minnesota state court on December 22, 1999. On the basis of federal subject matter jurisdiction, NWA removed the case to this Court on January 11, 2000.

As an incident of his employment with NWA, Griffiths signed a document entitled "Conditions of Employment," which spelled out the various rules which governed his relationship with NWA. This document contained an arbitration provision, which provided in part that:

> I understand and agree that any claims or disputes asserting recognized legal rights I may have with respect to my employment with the Company . . . shall be subject to arbitration[.] [. . .] This provision shall be construed as broadly as possible and any claims which I may have against the Company arising from the employment relationship, including the question of arbitrability and discrimination claims under the Minnesota Human Rights Act . . . [and] Title VII of the Civil Rights Act . . . shall be conclusively decided by binding arbitration in Minnesota.

(Ex. 7 ¶ 10.) Pursuant to this provision, NWA now moves this Court to compel Plaintiff to arbitrate his claims, and stay or dismiss this action during the pendency of arbitration.

[2] Both agencies decided that Griffiths' charge lacked sufficient merit to proceed. (See Def.'s Ex. 4 and 5.)

**DISCUSSION**

The law in this Circuit is clear: the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), renders contractual provisions requiring arbitration of employment-related claims under Title VII enforceable. See Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 835-37 (8th Cir. 1997). The Minnesota Supreme Court has also determined that an arbitration provision mandates the arbitration of an MHRA claim when the FAA applies. See Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 794 (Minn. 1995).[3] It is thus indubitable that the relevant case law counsels in favor of compelling arbitration in this case.

Despite the strength of the law, Griffiths raises a number of arguments in support of the propriety of filing suit instead of submitting to arbitration. He first contends that the agreement should be unenforceable because he signed it under duress–specifically, that he would not be hired if he did not agree to arbitration. This argument carries no force. No one compelled Griffiths to seek employment with NWA. No one threatened him with death or serious bodily harm if he did not sign the Conditions of Employment. "Minnesota courts only recognize duress as a defense to a contract when there is coercion by means of physical force or unlawful threats[.]" St. Louis Park Investment Co. v. R.L. Johnson Investment Co.,

[3]Two weeks ago, the Minnesota Supreme Court decided, in Correll v. Distinctive Dental Services, P.A., No. C7-98-2251, 2000 WL 280589 (Minn. March 16, 2000), that because the MHRA guarantees a judicial forum, an employee cannot lose his right to litigate an MHRA claim by signing an arbitration clause. See id. at *3. However, the court carefully noted that Correll did nothing to disturb the holding in Johnson, because the latter was based on a finding that the FAA preempted the MHRA, and thus rendered the MHRA's guarantees ineffectual before Congress' expressed intent that arbitration clauses should be enforced. See id. at *4.

411 N.W.2d 288, 291 (Minn. App. 1987). Griffiths was offered a position contingent upon his agreement to submit discrimination claims to arbitration. He freely accepted the position, as well as the concomitant restrictions that accompanied it.

Griffiths next attempts to raise two later documents as freeing him from the obligation to arbitrate. According to NWA, these were "severance agreements" that Griffiths refused to sign.[4] A section of these proposed agreements purported to divide the costs of arbitration equally between Griffiths and NWA, altering the original burden of NWA to pay all such costs. Griffiths contend that these proposed contracts replace the original agreement; because he did not sign these new documents, he contends he is not bound to arbitrate his claims. Griffiths' argument carries some intuitive understanding of contract law: if he had signed the proposed contract, the new document would have most likely superseded the prior agreements. Here, however, lies the problem: by not signing the proposed agreements, Griffiths ensured that the previous contract remained in full force. NWA's mere proposal to split arbitral costs, and Griffiths' refusal to agree thereto, carries no legal effect. One must actually sign a contract to make it binding.

Griffiths next argues that § 1 of the FAA renders the Act, and thus the arbitration clause in question here, unenforceable against him. § 1 provides that employment contracts of "seamen, railroad employees, or any other class of workers engaged in foreign or

---

[4]Griffiths claims to have attached these proposed agreements as exhibits to his Response. However, the two exhibits that he references are actually earlier Conditions of Employment that bear his signature.

interstate commerce" do not fall within the FAA's purview. Because NWA is covered by the Railway Labor Act and engages in interstate commerce, Griffiths contends that NWA falls within this exception. Case law, however, has interpreted this statutory exception quite narrowly. The Eighth Circuit has squarely held that this language refers only to employees who are themselves engaged in the actual transportation of interstate commerce for example, an employee who drives a truck across state lines. See Patterson, 113 F.3d at 835. Griffiths, a manager while employed by NWA, simply does not meet this requirement.

Finally, Griffiths notes that the EEOC has taken a stance against the enforceability of arbitration clauses which strip an employee of his right to a judicial forum to hear a Title VII claim. (See Pl.'s Ex. E, EEOC Notice, July 10, 1997.) The Court is well aware of the EEOC's position on this matter, as well as the similar position various federal courts throughout the United States have adopted. See, e.g., Duffield v. Robertson Stephens & Co., 144 F.3d 1182, 1191(9th Cir. 1998) (holding that 1991 Civil Rights Act rendered Title VII claims inappropriate as the subject of an arbitration provision). However, as discussed above, the opinions of the EEOC and the Ninth Circuit are not binding on this Court. This Circuit has made its position clear–the arbitration provision in Griffiths' Conditions of Employment is enforceable.

**CONCLUSION**

Griffiths signed an arbitration clause that this Court construes as enforceable. Because Griffiths can only raise his claims through binding arbitration, the Court dismisses

his case without prejudice. See Patterson, 113 F.3d at 838 (affirming district court's dismissal of discrimination case due to an arbitration agreement). Any further pursuit of Griffiths' claims must take place in arbitration, not in court.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Compel Arbitration and Motion to Stay or Dismiss (Clerk Doc. No. 6) is GRANTED;

2. This case is DISMISSED WITHOUT PREJUDICE; and

3. Any further prosecution of the claims raised in Plaintiff's Complaint must be pursued through binding arbitration.

Dated: March 31, 2000

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: MAR 3 1 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995